Our last case is Carrillo v. New York City. Thank you. Thank you. You are Mr. Bell Latone, is that right? Yes. And I'm pronouncing it right, is that correct? Yes. As a matter of housekeeping while you're getting settled, can you confirm for me the spelling of your client's last name? I suspect it's two Rs, two Ls. But I've seen it, one R, one L. Good morning. May it please the court. This is a case that's part of the Individuals with Disabilities Education Act. My client is a disabled student. She is non-verbal, non-ambulatory. She has some of the most severe disabilities that a student can have. She was diagnosed with a traumatic brain injury days after she was born and has had that injury her entire life. She has been classified with that injury. She has been in a classroom setting with six students, one teacher, one paraprofessional, and she has her own dedicated nurse since she's entered the school system, 2015 to present. In the 2018-19 school year, there was a finding by the state review officer that the district's 12-1-4 recommended class setting was appropriate. This finding was adopted by the district court. The district court, however, for several reasons in adopting that finding. The DOD in recommending the 12-1-4 placement never considered any other placement. Didn't consider the placement the student was in, which this court has said must happen. Didn't consider in the IEP the parents, for lack of a better word, preference. That's a word that's used, but it's not as much a preference as it is an understanding. Well, weren't the parents heard as to what their preference was? So why did we assume that if they were heard, it would not be considered? Because the individual education program itself has a space to what other programs consider. For other students, they will say a 6-1-1 or 12-8-1, whatever else the program is. There was no alternative consideration on the IEP itself. So the evidence in the record was that there was no other placement that was considered. There may have been one discussed by the SRO, but not considered by the school district. Now, in this case, there's a law. The New York State legislature says, a student with highly intensive management needs, who needs a high degree of attention and intervention, shall not be in a class that exceeds six students. Six, the SRO, in this case, the state review officer, went out of his way, went out of his way to avoid New York State law. In the brief, I have an example of another state review officer that said where a child has highly intensive management needs and high degree of attention and intervention needs, that student must be placed in a 6-1-1 class ratio. This SRO said that highly intensive management needs is a moniker. Didn't give it any meaning whatsoever. Said the parents got it wrong. The DOE witnesses themselves testified that in a 6-1-1 class, this student had made progress. The year before, was making progress in the class he was in. That's in their record. Counsel, aren't you turning the inquiry on its head? The question is not whether the parent's preferred program would work for this student, right? The question is whether the school district's proposed program is, in fact, an FAPE. Yes, except, again, the law is that they have to consider that. There's no explanation why the 6-1-1 class wouldn't work. No explanation why the 12-1-1 class wouldn't work, except there was this vague consideration that there would be more people, more adults available to meet this student's needs in the classroom. But those adults are paraprofessionals. When you double the class size for a student like this dude, you cut the time that she has for the special ed teacher in half. But there's a difference between preference, optimization, ideals, and adequate. Whether we like it or not, the A in FAPE is adequate. And the first question here, right, is has the DOE established that its proposal provides this student with a free and adequate public education? I'm sorry about that. It's appropriate. Free, appropriate, public education. Sorry, sorry. Appropriate, yes. And this student, in a classroom with 12 other students, is not appropriate. The New York state legislature said so. Said so. This, I tell in the district court, the district court found that this statute, the statute that says a student with highly intensive management needs shall be in a class that doesn't exceed six students, conflicted with the statute in New York state that says a student who has severe local disabilities shall not be in a class that exceeds 12 students. With all due respect, that's like saying a homicide murder statute conflicts with a homicide statute. It does not. Highly intensive management needs in what everybody who testified in this case to this group has. So if everything about the proposal stayed the same, including that the student was placed in a public setting, public education setting, instead of at the private facility, but it was shifted from the 12, 4, 1, I'm going to get the numbers wrong there, but from the total 12 students with the number of professionals to a 6, 1, 1, that would be sufficient here? The length of the classes the student received were also cut in half. 12, 1, 2, 4, and 30-minute sessions instead of the 6, 1, 1, and 60-minute sessions that she's had before and since. By the way, the IHO in this case found in February 2018 on the prior year, 2017-18, that the appropriate class she rejected the 12, 4, 1, 4 class, said it was not appropriate for this student. At about the same time, in October 2018, the DOE was developing its IEP for the school year. Isaac Carter told the DOE to make the classification of traumatic brain injury, not open disability, and that the 12, 4, 1, 4 recommendation they made for the 17-18 year was not appropriate, that that recommendation shouldn't be in the IEP. But they made it anyway. Can you cover in your last minute the burden of proof? I seem to see you suggesting that the burden of proof was incorrectly assigned to the plaintiffs. I guess the part that I'm confused about is that isn't it only relevant if it's like a 50-50 call, right? Like if we think that the situation is more lopsided than that, then it might not come into play. Like how does it change the outcome? This is the burden of proof with respect to the appropriateness of the underlying IEP. The IDEA, the United States Supreme Court, said the person who's looking for relief has a burden of proof on all three prongs of the burden of proof. But the IDEA allows states to modify the statute itself. And New York State has put the onus on the school district to show the IEP is appropriate in the first instance. The parents don't have the burden to show it's inappropriate. By saying the parents don't have the burden of proof, the parents didn't offer evidence in the administrative hearing that the state was not appropriate. The school district came in and offered proof. But there wasn't any proof in the record. There wasn't anything that discussed why this 1204 program was any better than 6104 that the child was given. Now, our case is in a brief. The circuit has upheld New York's shifting of the burden. And the knowledge is that on that first prong, it's the school district that has the burden of proof, not the parents. I gave you those slides. Do you want to get up here again? You can bring it up when you come in again. OK. Ready? Thank you. Thank you. Ms. McCampbell? Good morning, Your Honors. My name is Lisa Corky. I'm here to be counsel on behalf of the defendant, Elias. Your Honors, this court should affirm the grant of summary judgment to the defendants. And at the outset, it's important to bear in mind the standard of review here, which is circumscribed in overview. This court has made clear that when the court only seeks to independently verify that the administrative records support the conclusion that the school district offered the student an appropriate educational program. And here, as both the SRO, the state review officer, the IHO, and the court hearing officer, and the district court all agree, DOE offered the student an appropriate education program for the 2018-2019 school year. And there's three additional reasons, Your Honor, in addition to the baseline standard of deference that counsel in favor of deference here. I'm sorry. Can I just ask a big picture question? And I'm sorry if I'm missing something. We have one state regulation that applies to MG, which says that the class size should be 12 or fewer. We have another one that says her class should be six or fewer. Why are they actually in conflict? It would seem to me that it would be different if the statute said only 11, or if the statutes or the reg only said only seven. But a class size that is less than six satisfies both of them. So why is there a conflict? So, Your Honor, we're not aware of any precedent for requiring a school district to comply with these multiple different class placement regulations at the same time. And that's not what the parents have been seeking here. They want to place their student in a six-to-one-to-one classroom. Right, which is consistent with both of the statute, with both of the reg provisions that you say are applicable, right? It would not, Your Honor, because you would need an additional service provider, because you have to have at least one additional staff member for every three students. You would have to have a six-to-one-to-two classroom. So it would be different than the placement the parents were seeking. But it would be different, but it wouldn't run afoul, right? It's a different setting. But the six-to-one ratio is consistent with the 12 ratio, because it is not requiring something more, right? I'm not sure if I follow you, Your Honor. In order to comply with both at once, you would need a different classroom than either 12.1.4 or 6.1.1. You would need to have an additional service provider. So it would be different than what is the baseline standard under each of those regulations. And we're not aware, again, any precedent for requiring school districts to comply with both at once, nor has that what the parents have been seeking here. And here, the 12.1.4 was supported by the regulations for severely disabled students, which all parties agree the student has severe multiple disabilities. And it was supported by the totality of the record. The in-question hearing officer heard testimony from several district witnesses who testified why the 12.1.4 classroom would be particularly appropriate for this student, based on her educational needs and her educational circumstances. The 12.1.4 classroom is more restrictive than a 6.1.1 classroom, because it has a higher number of adults per student. It has a greater variety of adults in the classroom and a greater number of adults. What do you mean greater variety? Yeah, as your adversary points out, if you have twice as many students, that teacher has twice as many students on his or her hands. Well, what are those four? You said there's a variety of services. What do those four have to offer? Having those additional professionals in the classroom, they offer reinforcement to the student in repetition and generalization of the lessons that the special education teacher is providing. And for that reason, this is the most restrictive classroom and is considered the most appropriate for students with the type and severity of needs that this student had. That was why the district recommended for the student this year. And that was what, again, district witnesses testified at the hearing as to the appropriateness of this classroom. The burden of proof, Your Honor, both the IHO and the SRO placed the burden of proof on the district at the administrative proceedings. And they wrote down that the district had met its burden to show that this was an appropriate placement for this student for this school year. I just want to address some of the other points that my adversary made. With respect to the question of whether DOE considered alternate placements, the IEP absolutely addressed an alternate placement. It mentioned the 12-to-1-to-1 ratio would not be appropriate for the student. There was testimony at the due process hearing that DOE considered a smaller setting for this student and ultimately concluded that the 12-to-1-to-4 classroom was more appropriate because a more intense staffing ratio would benefit this student because she needs the level of reinforcement for multiple staff members. There's nothing in the record to show that the parents that were specifically requested the 6-to-1-to-1 ratio. We know that they didn't attend a second CSE meeting that was rescheduled. But nonetheless, there was testimony to show that DOE did consider a smaller class setting and rejected that for that reason. I was surprised to hear, I guess Council mentioned the 60-minute session. They didn't read that argument in their appellate brief. But in any event, the IHO, the SRO, and the district court all agreed that the record showed that the recommendation for 30-minute sessions was appropriate because there was evidence that the student was tired from having a longer session. And DOE witnesses testified that the sessions start exactly in 30 minutes. There's no time to transfer. It's countenance to that. Different school years have different administrative records under the IPPA. So the fact that a 6-to-1-to-1 placement had been found appropriate in other years doesn't mean that a 12-to-1-to-4 ratio is not appropriate for this school year. But doesn't that set up some obligation to explain why? Well, again, there was testimony in the hearing that DOE considered a small upsetting and ultimately concluded that a 12-to-1-to-4, the more restrictive class ratio, the more staff, the higher ratio of adults to students, and a greater variety of staff was more appropriate for the student. And as the court has pointed out, the standard under the first common growing-to-carter test is what's an appropriate placement, not what's an ideal placement. So there could possibly be more than one appropriate placement. The fact that 6-to-1 is not appropriate in other years doesn't mean that a 12-to-1-to-4 was not appropriate in this year. I'd also like to just address the second and third prong of the growing-to-carter test, Your Honor. So the SRO and the district court did not reach those prongs, but the IHO did. And this court can and should defer to Wally's opinion of the IHL in the second and third prong. The IHO found that neither of these prongs favored the parents here. On the second prong, whether the parent's unilateral placement was appropriate for the student, the IHO found that the newly-opened I-brain was not an appropriate placement for the student. I-brain, at the time of the school year, it hadn't been vetted by any state or regional convention agency. Had it been set up? Was it functioned? It hadn't been vetted by any state. Had it been set up? Was it functioned? It was, Your Honor, but it wasn't fully staffed. So it didn't have a vision education specialist on staff, which is something that all parties agree that the student needs vision education services. There was no showing that the missed services were ever made up, which led the IHO to conclude that the missed services were not made up. And moreover, I-brain moved three times its first year of operation. It was in the process of moving during the due process hearing, and the educational director could not name any location. She admitted it would have been better. She could have named it. So for all those reasons, the IHO found that the newly-opened I-brain was not an appropriate placement for this school year. And third, Your Honor, to balance the equities, IHO also ruled against the parents on that prong as well. IHO pointed out that I-brain tuition was $148,000 for eight and a half hours of academics a week. Not reasonable. The IHO also concluded that the additional charge of $7,000 for related service session provided by a salary of I-brain staff is also not reasonable. Did the SRO address any of these things? It did not, Your Honor. But again, in the absence of an SRO or district court opinion, this court can defer to all reasoned conclusions of the IHO on the second year prong. So I'm sorry. There's something, and I apologize if I'm confused, but I'm glad to have you in front of me to be able to answer it. My understanding is that the regs are on limitations for class sizes, not actually the entirety of the ratio all the way through. Is that wrong? I mean, the regulations, they have a limitation on class size, and they also include the number of special education teachers and the ratio of staff to students  And this court and other courts in the circuit have found that appropriate classroom placement is based on the totality of the evidence and consideration of the regulations. And here, again, placement certainly accorded with the right for severely multiple disabled students if the student was, and was supported by the totality of the evidence at the due process hearing. Unless Your Honor has any further questions, we would ask that you affirm the grounds on the death of the district and affirm the shared conclusions of the IHO, SRO, and district court. Thank you. You've got two minutes. If I may, just to work backwards quickly. With respect to considering, I'm just going to ask this court to remand this case back to the district court to consider problems two and three, but I'll get to that. But with respect to the IHO saying that this school hadn't been vetted by the state, it does not need to be. The Supreme Court said in Florence v. Carter, reversing case law out of the Second Circuit, when the Second Circuit said in the early 90s he was tougher with the case, that students' parents can't be reimbursed for a not approved private school, a school that the DOE hasn't put its imprimatur on, the Supreme Court said, no, no, no, no. You can't trust a school district who failed your kid in the first instance to approve the school that you're setting up. I don't think there's a finding here or a ruling that one cannot place a child in the I-Brain school because it hasn't been vetted. I think it's a factor that was considered, that it had not been evaluated. Well, the Supreme Court said it's not something you should consider or can consider, because it does not need to be vetted by the state. The Supreme Court said you can't consider it? The Supreme Court said you should not consider it, because considering the opinion of a school district that failed your student in the first instance is not proper. I-Brain does not need to. Although it does every year in private school, it does not need to create an IEP the way the school district does. It does not need to conform to the same regulations that a public school does or approve private school does. But if I can just, if it's OK, just answer one of your questions, Judge, I'm sorry, about what's the difference in the two statutes and why they're different. No, I'm not. I want to pinpoint this. I'm not actually asking what the difference is. I want to be clear that both of these statutes speak to class size. And the ratio of class size to teacher is not at issue in this case. What is your reading of these statutes? Well, that was one of the questions. And yes, the statute that provides for a 6 to 1 to 1 class only says that there shall be more than one extra person in the class. It doesn't limit it to 2, 3, 4, or 5. The other statute says there shall be a ratio. For every three students, there shall be an extra paraprofessional or adult. So if there's 12 students in the class, there has to be four adults and one teacher. But again, this finding that there are more people to help the student, this student has a 1 to 1 aid that goes everywhere she goes. She doesn't need the other four people in the class. What she needs is the time with the teacher. Now, Judge, the other difference between these statutes is the highly intensive management and the high degree of attention. The other one is somebody who has severe multiple disabilities. This student does not. And that's another error in this case. I thought you'd start out listing disabilities, and they sound like they're severe to me. Not multiple. Well, you listed several. Multiple disabilities. Multiple. There are two classifications that get you the special education. But in New York, this other statute for a student with severe or rather highly intensive management needs, that class is for a student with multiple disabilities. My client had one. She had a brain injury. And in the brief, there's a footnote that discusses this. Well, the injury may be the cause of disability, but it doesn't necessarily constitute a singular disability. I mean, deficits in walking and speaking and delay in learning, these are all separate deficits. They're all separate disabilities. Not disabilities. My client's situation is one injury with different sequela. One injury with different sequela. And the question is, are those sequelas disabilities? Not under the law. Multiple disabilities is somebody who can break a leg and independently lose their sight, independently two years later lose their hearing. These are multiple disabilities. They are multiple. They can't be treated in one class. New York legislature doesn't want children in a class that can address the one injury, which is what the TBI class does, or the class of children with these highly intensive management needs. In classifying a student, the single year as a student with multiple disabilities, the SRO stretches the analysis and says that a 12-student class size is appropriate because she has multiple disabilities. But she was born, and weeks after she was born, suffered a traumatic brain injury. That doesn't go away. And every individual that's classified with six has a classified with a traumatic brain injury. Counsel says you can't consider evidence from year to year. Sure you can. I, Joe Farrell, in subsequent years said, unless the district comes in and can put proof in the record as to why this disability should change and should be reclassified, then it doesn't get reclassified. And that's a question of law, that the district court did not have to defer to the SRO. Again, this circuit has said, and your Honor, in respect to the sites a minute ago, one is Barton at 694, that third one's at 7. The other is MS-231 at 396. It's the second circuit saying that the school district got the word approved. So I think we're good?  I think we're good. Thank you so much, sir. Thank you very much.